JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Charles Weatherspoon, appeals from his convictions for two counts of drug trafficking and one count of possessing criminal tools. For the reasons stated herein, we affirm the possessing criminal tools conviction, reverse the drug trafficking convictions, and remand the matter for further proceedings.
 {¶ 2} In December 2006, Weatherspoon was indicted on one count of possession of drugs (R.C. 2925.11), two counts of drug trafficking (R.C.2925.03), and one count of possessing criminal tools (R.C. 2923.24). One of the drug trafficking charges contained a schoolyard specification (R.C. 2925.03(C)(2)(b)). The controlled substance specified in the indictment was "crack cocaine, a schedule II drug, in an amount equal to or exceeding ten grams but less than twenty-five grams."
 {¶ 3} Weatherspoon pled not guilty to the charges and waived his right to a jury. The case proceeded to a bench trial on May 22, 2007. On the same date, prior to the commencement of trial, the state moved to amend the indictment to reflect the weight of the crack cocaine as "equal to or exceeding 25 grams." Over Weatherspoon's objection, the trial court allowed the amendment.
 {¶ 4} At trial, the state called two police officers to testify, Detective Scott Moran and Detective Elbin Negron, both with the Cleveland Police Department's narcotics unit. Detective Moran testified that on November 29, 2006, he assisted *Page 4 
Detective Negron on a "buy-bust operation," in which a confidential informant was to purchase an ounce of crack cocaine for $1,000.
 {¶ 5} The informant was equipped with a wireless transmitter, and the officers were monitoring his conversations. The informant placed a call to a man referred to as "C-dog" to set up a buy of $1,000 of crack cocaine. C-dog was later identified as Weatherspoon. Detective Negron testified that he was present when the informant made the call.
 {¶ 6} The informant was driving his own vehicle, which had been searched to make sure there was no preexisting contraband in it. He was directed to East 71st Street and Kinsman Avenue, where the officers observed Weatherspoon enter the informant's vehicle. The officers observed a couple of stops that were made, heard Weatherspoon tell the informant that his brother was going to get the crack cocaine, and watched as the informant's vehicle stopped behind a minivan on Port Avenue. At that location, Weatherspoon exited the informant's vehicle and met the driver of the minivan, who was later identified as James Prather. The two then returned to the informant's vehicle.
 {¶ 7} The informant was in the driver's seat, Weatherspoon was in the front passenger seat, and Prather was in the back seat behind the informant. The informant gave the officers a verbal signal that the crack cocaine was present, and the officers went in for the arrest. *Page 5 
 {¶ 8} The drugs were recovered on the front passenger seat where Weatherspoon was seated. Weatherspoon was heard saying, "don't throw that stuff my way `cause it isn't mine."
 {¶ 9} During the arrest, Detective Negron seized Weatherspoon's cell phone, which contained the number of the informant. Detective Negron estimated that the location of the deal was within one thousand feet of a school. The drugs tested positive for 25.48 grams of crack cocaine.
 {¶ 10} The following day, Detective Negron interviewed Weatherspoon. Detective Negron stated that Weatherspoon told him he set up the deal and was getting a $200 cut for being the middleman. Weatherspoon also made a written statement in which he confirmed that he received a call for $1,000 of crack; that he contacted James Prather to ask if he had $1,000 of crack, and Prather said yes; that he rode with the caller and met up with Prather; and that he was getting $175 out of the deal.
 {¶ 11} The trial court found Weatherspoon guilty of two counts of drug trafficking and one count of possessing criminal tools. On count two, the trial court found that the state had not proven the schoolyard specification beyond a reasonable doubt. The court sentenced Weatherspoon to three years on the drug trafficking counts, which were merged, and a concurrent sentence of six months for possessing criminal tools. *Page 6 
 {¶ 12} Weatherspoon filed this appeal, raising two assignments of error for our review. His first assignment of error provides as follows: "Appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 13} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 14} Weatherspoon argues that his trial counsel was ineffective because she did not attempt to suppress the audio recording of the alleged drug transaction or the two statements given by him to law enforcement officials. His argument is no more than a conclusory assertion and provides no basis that would have warranted suppression.
 {¶ 15} "Failing to file a motion to suppress does not constitute ineffective assistance of counsel per se. To establish ineffective assistance of counsel for *Page 7 
failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question." State v. Brown,115 Ohio St.3d 55, 68, 69, 2007-Ohio-4837 (internal citations omitted). In this case, defendant has advanced no legal argument supporting his contention that his trial counsel should have filed a motion to suppress, and our own review of the record reveals no evidence indicating that a motion to suppress would have had any reasonable probability of success. Therefore, defendant's argument fails the second prong of Strickland, which requires that he show prejudice from trial counsel's allegedly ineffective performance.
 {¶ 16} In addition to the arguments above, Weatherspoon argues that he was denied effective assistance of counsel because defense counsel did not call him to testify on his own behalf. However, Weatherspoon fails to demonstrate that if he had taken the stand, the outcome of the hearing would have been different.
 {¶ 17} The decision whether to take the stand is a tactical decision, to be arrived at between the defendant and his attorney. State v.Holt, Cuyahoga App. No. 87019, 2006-Ohio-3327. Weatherspoon fails to state what testimony he would have provided and has not shown that his counsel's advice was flawed and prejudicial to him.
 {¶ 18} Next, Weatherspoon asserts that his trial counsel failed to object to hearsay throughout trial, without referencing a single incident in the record or showing any resulting prejudice. He also complains that his trial counsel did not question Detective Moran about logging Weatherspoon's cell phone or ask him to *Page 8 
explain how he linked the calls made between the informant and Weatherspoon. Our review of the record reflects that Detective Negron testified that he was present when the informant made the call and that the officers proceeded to observe the informant as he picked up Weatherspoon. Further, in the statements he provided, Weatherspoon confirmed receiving the call and admitted taking the informant to Prather and taking the drugs in return for a cut of the money.
 {¶ 19} The facts of this case do not indicate that the outcome of Weatherspoon's trial would have differed but for defense counsel's actions. Accordingly, his trial counsel was not ineffective, and his first assignment of error is overruled.
 {¶ 20} Weatherspoon's second assignment of error provides as follows: "Appellant's rights were violated when the trial court allowed the state to amend the indictment from a felony of the second degree to a felony of the first degree minutes before trial."
 {¶ 21} The drug trafficking charges in the indictment specified the controlled substance as crack cocaine "in an amount equal to or exceeding ten grams but less than twenty-five grams." In permitting the state to amend the indictment to increase the amount of the substance to an amount "equal to or exceeding 25 grams," the drug trafficking charges were increased from felonies of the second degree to felonies of the first degree. Weatherspoon argues that this effectively changed the name or identity of the charges. *Page 9 
 {¶ 22} Crim.R. 7(D) provides as follows: "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 23} This same issue was recently addressed in State v. Davis, Highland App. No. 06CA26, 2007-Ohio-2249, discretionary appeal allowed115 Ohio St.3d 1420, 2007-Ohio-5056. In that case, the court held that an amendment to an indictment that changes the degree or severity of the offense charged effectively changes the identity of the crime in violation of Crim.R. 7(D), and also runs afoul of constitutional protections requiring notice to the accused and the accused's right to presentment to the grand jury. Id. In reaching this decision, the court stated as follows:
 "The Supreme Court of Ohio has indicated an amendment that changes neither the degree nor the severity of an offense does not change the identity of the offense. See State v. O'Brien (1987), 30 Ohio St.3d 122, 126-127, 30 Ohio B. 436, 508 N.E.2d 144 * * *. While the court in O'Brien stated its conclusion in the negative, we believe it can fairly be construed to mean an amendment that increases the degree of the offense does run afoul of Crim.R. 7(D). This conclusion is bolstered by State v. Headley (1983), 6 Ohio St.3d 475, 6 Ohio B. 526, 453 N.E.2d 716. There, the court held that amending a trafficking in drugs indictment to describe the controlled substance involved changed the name and identity of the offense by increasing the severity of the offense from `trafficking in drugs' to `aggravated trafficking in drugs.' The court thus held that Crim.R. 7(D) prohibited the amendment. * * * . *Page 10 "Here, the state changed the indictment to charge a greater amount of drugs was involved, which consequently elevated the degree of the offense from a fourth-degree felony to a second-degree felony. * * * This increase in the severity of the offense changes the identity of the offense because of the lack of notice to the accused and the violation of his right of presentment of the charges to the grand jury. Headley, supra, O'Brien, supra. Thus, Crim.R. 7(D) flatly prohibits the amendment and the trial court erred by permitting the state to do so."
 {¶ 24} Although Davis, supra, is currently pending before the Ohio Supreme Court, we believe that the decision is instructive and follow it herein. In this case, because the amendment to the indictment increased the degree of the drug trafficking charges, it changed the name or identity of the crime charged. This case is distinguishable fromState v. Spurlock, Hancock App. No. 5-03-1, 2003-Ohio-6006, which was relied upon by the trial court, wherein the degree of the offense was not changed by the amendment.
 {¶ 25} Because the trial court erred by permitting the state to amend the indictment in this matter, we reverse Weatherspoon's conviction on the drug trafficking charges and remand the matter for further proceedings. Weatherspoon's second assignment of error is sustained. *Page 11 
Judgment affirmed in part, reversed in part, and case remanded.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J., and ANN DYKE, J., CONCUR *Page 1