[Cite as *State v. Dykes*, 2023-Ohio-4378.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

RALPH EDWARD DYKES, JR.,

      Defendant-Appellant.

CASE NO. 2023-L-055

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2022 CR 000643

### O P I N I O N

Decided: December 4, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Jerri Mitchell-Tharp*, P.O. Box 1126, Fairport Harbor, OH 44077 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Ralph Edward Dykes, Jr., appeals the judgment of the Lake County Court of Common Pleas, convicting him, after trial by jury, on one count of Possession of a Fentanyl-Related Compound, a felony of the first degree, in violation of R.C. 2925.11. At issue is whether the state produced sufficient, credible evidence of the weight of the drugs possessed to obtain the underlying conviction. We affirm.

{¶2} On June 23, 2022, agents from the Lake County Narcotics Agency received information from the Wickliffe Police Department that appellant was suspected of

trafficking in fentanyl. Wickliffe detectives had been conducting surveillance at the Fairbridge Inn and Suites where appellant was apparently residing.

{¶3} Officers obtained a search warrant and officers and agents entered the room where appellant occupied. Appellant was removed and suspected contraband, in the form of small blue pills, was retrieved from the room. The evidence was sent to the Lake County Crime Laboratory ("LCCL") for testing. Kimberly Gilson, a forensic analyst with the LCCL, determined she received in evidence a total of 337 unit doses (pills). LCCL received the evidence in three separate receptacles. Of the unit doses tested, each tested positive for fentanyl or a fentanyl-related compound.

{¶4} Appellant was indicted on one count of Possession of a Fentanyl-Related Compound, a felony of the first degree, in violation of R.C. 2925.11. He entered a plea of "not guilty." The matter proceeded to jury trial. At trial, Ms. Gilson testified that, of the 337 units received, she tested only 12. Five from one receptacle; five from another receptacle; and two from the third. The weight of the tested samples was 1.34 grams. After the state rested, appellant moved for acquittal pursuant to Crim.R. 29. Counsel argued there was insufficient evidence to show that the amount of fentanyl-related compound equaled or exceeded 20 grams. The motion was denied, and appellant was convicted. He was subsequently sentenced to an indefinite prison term of a minimum of seven years to a maximum of 10.5 years. He now appeals assigning the following as error:

{¶5} "Appellant's conviction was based upon insufficient evidence and was against the manifest weight of the evidence."

{¶6} Appellant contends that the conviction is both based upon insufficient evidence and is also against the manifest weight of the evidence. "When the appellant

2

challenges both the sufficiency and the manifest weight of the state's evidence in an appeal, the appellate court need only address the manifest weight argument because the conclusion that a verdict is not against the manifest weight necessarily entails the additional holding that it is also supported by sufficient evidence." (Citations omitted.) *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

{¶7} With this principle in mind, a court reviewing a challenge to the manifest weight of the evidence observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994). Put differently, the court must assess conflicting testimony, review rational inferences that may be drawn from the evidence, and evaluate the strength of the conclusions drawn therefrom. A challenge to the weight of the evidence requires a court to consider whether the state met its burden of persuasion. *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶ 78.

{¶8} Appellant challenges whether the state submitted sufficient, credible evidence that he possessed an amount equal to or more than 20 grams, but less than 50 grams, of a fentanyl-related compound. He cites, at great length, Ms. Gilson's testimony. In particular, she testified that she tested 12 of the 337 pills that were sent to LCCL. The total weight of the 337 pills taken from the hotel room was 36.61 grams; the weight of the substances tested, however, was 1.34 grams.

3

Case No. 2023-L-055

{¶9} Appellant recognizes that case law does not require the entirety of all substances collected to be tested. *See State v. Wright*, 2017-Ohio-9041, 101 N.E.3d 496, ¶ 31 (4th Dist.); *State v. Gartrell*, 2014-Ohio-5203, 24 N.E.3d 680, ¶ 96 (3d Dist.); *State v. Edwards*, 10th Dist. Franklin No. 12AP-992, 2013-Ohio-4342, ¶ 40; *State v. Dixon*, 9th Dist. Medina Nos. 11CA0065-M, 11CA0087-M, 2012-Ohio-4428, ¶ 23. Such "random-sampling method" or "hypergeometric" testing are acceptable methods of testing in Ohio. Further, he acknowledges that courts have held that this method is sufficient as a matter of law to support the reasonable inference that the entirety of similarly packaged substances is the same substance. *Wright* at ¶ 31, citing *State v. Carroll*, 2016-Ohio-374, 47 N.E.3d 198, ¶ 32 (4th Dist.). He maintains, however, that Ms. Gilson did not testify that she employed the hypergeometric or random-sampling method. Moreover, appellant submits that Ms. Gilson never directly testified that the doses she received were homogenous or visually the same.

{¶10} Finally, appellant cites the BCI Drug Chemistry Methods Manual on the use of "Hypergeometric Probability Distribution Sampling Plan" which provides that "[t]he application of hypergeometric sampling establishes a 95% confidence level that at least 90% of the units in the sample are as reported." *Id.* at p.93. Appellant contends that because Ms. Gilson did not testify her scientific findings were established by a 95% (or any percentage) confidence level, there was no foundation laid as to the scientific validity of her methods.

{¶11} Initially, this court has not addressed in great depth the use of random-sampling-method testing in the context of sufficiency and weight analyses. In *State v. Earle*, 120 Ohio App.3d 457, 698 N.E.2d 440 (11th Dist.1997), this court, in passing,

4

Case No. 2023-L-055

recognized the acceptability of the method, but the balance of the analysis in that case addressed the admissibility of the bulk amounts into evidence. That is, the appellant in that matter argued there was insufficient foundation for the jury to conclude that the entirety of the untested substances were akin to or the same as the tested substances. This court concluded there was no evidence of tampering and the chain of custody of the contraband was adequately established. As such, this court determined that evidence of the random-sampling method was sufficient to allow the jury to consider the sufficiency and weight of the evidence submitted by the state. *Id.* at 471-472.

{¶12} In this matter, no objection was specifically leveled at the admissibility of the bulk amount. It is fundamental that in order to challenge the admissibility of evidence, one must object and allow the trial court the opportunity to exclude it. *See State v. Bowden*, 11th Dist. Ashtabula No. 2013-A-0040, 2014-Ohio-158, ¶ 41 (failure to object at trial to the admissibility of testimony or evidence waives all but plain error). The lack of objection may be due to appellant's recognition that the random-testing method is an accepted practice for the state to meet its burden of production in Ohio. Given this acknowledgement, there can be no plain error.

{¶13} Because there was no objection (and no plain error in this matter), any alleged defect goes entirely to the weight, and not the admissibility of the evidence. The jury was accordingly entitled to weigh the evidence and determine whether, in light of the testimony and procedures, the state met its burden of production and persuasion.

{¶14} That said, as emphasized by the state and acknowledged by appellant, the random-sampling method has been accepted by this and other districts and we perceive no compelling basis to reject it as a means for the state of meeting its burdens of production

5

and persuasion. Here, the state established that the random samples were the controlled substance alleged in the indictment; the state established, via Ms. Gilson's testimony, the total weight of the substance seized and that weight was within the range alleged.

{¶15} Moreover, and despite appellant's contentions to the contrary, the state elicited testimony from Ms. Gilson that inferentially demonstrated the substances tested from the three separate receptacles possessed relative homogeneity as they related to the randomly selected samples. To wit, the state asked Ms. Gilson whether the samples are "homogenous, they're all the same or whether they're different?" Ms. Gilson responded that "[i]f [there] were differences they would be put into different populations. So if there was a color difference or a shape difference, then yes they would be in different populations." We conclude the foregoing was sufficient to establish the homogeneity of the substances that were wholly contained in each respective receptacle.

{¶16} Further, appellant's argument that Ms. Gilson's failure to testify that she employed random-sample testing or hypergeometric testing undermined her testimony is unavailing. Appellant cites *Wright*, 2017-Ohio-9041, at ¶ 31, for the proposition that "where the expert witness testifies that he did not use the hypergeometric or random-sampling method and therefore he cannot identify the content of the remaining pill population within a reasonable degree of scientific certainty, the remaining pills should be excluded." Here, as just discussed, Ms. Gilson confirmed that the samples in each receptacle were the same or homogeneous. Such a statement inherently implies that her use of a select number of random samples from each receptacle involved the random-sample method. She did not deny using the hypergeometric or random-sample method. Rather, Ms. Gilson explained her methodology which conformed to the methodology

6

defined as the random-sample method. We decline to hold that a forensic analyst must affirmatively state the formal, titular designation of the method of testing where he or she has adequately elucidated the steps of the methodology for the jury to consider and weigh. To hold otherwise would elevate form over substance.

{¶17} Next, appellant argues Ms. Gilson's testimony regarding her methods failed to meet the "Hypergeometric Probability Distribution Sampling Plan" as promulgated by the Ohio Attorney General. Specifically, he appears to assert there was no evidence that Ms. Gilson had a 95% confidence level that at least 90% of the units tested were a fentanyl-related compound, i.e., the percentage confidence that hypergeometric sampling establishes according to the manual cited by appellant.

{¶18} We have found no case law requiring a forensic analyst employing the random-sampling method or hypergeometric to testify to the confidence level described by appellant. Moreover, it would seem that had Ms. Gilson so testified, it would have enhanced, not decreased, the reliability of her testimony relating to the contents of the respective receptacles. Appellant's counsel, in an effort to create reasonable doubt, drew the jury's attention to the uncontested fact that Ms. Gilson did not test the entirety of the substances she received. Had counsel desired to further challenge the reliability of the tests or the testing process based upon grounds that it was not sufficiently random or representative, she could have filed a *Daubert* motion and called a competing expert or attempted to undermine the reliability of the testing method by some other means. Counsel did not do so, but such a decision could be deemed strategic. After all, in attempting to assail the reliability of a testing method regularly deemed acceptable, it is possible defense counsel could simply reinforce its utility and trustworthiness.

7

Case No. 2023-L-055

{¶19} We recognize that if each pill or unit tested was the same size, then each would weigh approximately .11 grams (1.34 divided by 12 units). To reach the threshold weight she would have been required to test approximately 182 samples and obtain a positive result (20.02 grams). This is a significant disparity, i.e., 12 samples tested versus 182 samples to actually establish forensic proof with specificity. Still, because the random-sampling method has been deemed acceptable and the jury was aware of the disparity, we decline to find a manifest miscarriage of justice.

{¶20} In light of the foregoing, we conclude that, via Ms. Gilson's testimony, the jury could reasonably extrapolate from a random sample of apparently homogeneous substances found in three separate receptacles that the whole of the substances in each receptacle were the same. This case involves contraband pills which shared size, weight, as well as color characteristics and which were found in the same general location. A trier of fact could reasonably conclude that the untested samples were the same as the random samples and that such an inference is of sufficient strength to support a guilty verdict beyond a reasonable doubt.

{¶21} It bears noting that this analysis cannot be extended to a situation where a sample is taken from only one of multiple receptacles. Such limited testing, even if the substances in each receptacle appear the same, would be insufficient to establish proof because any number of substances (illicit or legal) may look the same. In other words, where one receptacle using the random-sampling method produces a positive identification of contraband, it does not follow that the random sampling would be sufficient to impute that identification to other receptacles untested, even if they appear similar and are in a similar location. Under such circumstances, in order to satisfy its initial

8

Case No. 2023-L-055

burden of production, the state must conclusively establish it tested a sample of a sufficient number within each receptacle to prove each contained the contraband alleged. The trier of fact, of course, must then determine whether the number and selection of the samples tested convinces it beyond a reasonable doubt of the truth of the matter asserted by the state.

{¶22} We therefore hold the state met its burden of persuasion regarding the weight of contraband seized in the underlying matter. Because the conviction is not against the weight of the evidence, it is necessarily supported by sufficient evidence.

{¶23} Appellant's assignment of error lacks merit.

{¶24} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.