[Cite as *State v. Clark*, 2025-Ohio-4992.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

ROBERT G. CLARK,

        Defendant-Appellant.

CASE NO. 2025-L-006

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2024 CR 000507

---

## OPINION AND JUDGMENT ENTRY

Decided: November 3, 2025
Judgment: Affirmed

---

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, L.L.C., 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellant).

ROBERT J. PATTON, P.J.

{¶1} Defendant-appellant, Robert G. Clark ("Clark"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to a mandatory indefinite prison term of a minimum of two years to a maximum of three years as a result of his conviction of aggravated trafficking in drugs, a felony of the second degree, and aggravated trafficking in drugs, a felony of the third degree. Both trafficking offenses had accompanying forfeiture specifications pursuant to R.C. 2941.1417 and 2981.04. For the following reasons, we affirm.

{¶2} On appeal, Clark asserts that insufficient evidence was presented to support his convictions and that his convictions are against the manifest weight of the evidence.

{¶3} Upon review, we conclude that Clark's convictions are not against the manifest weight of the evidence. As such, Clark's convictions are necessarily supported by sufficient evidence. Two controlled buys were conducted wherein drugs were purchased from Clark. Both transactions involved methamphetamine which were over the bulk amount but less than five times the bulk amount. The second controlled buy occurred within the vicinity of a school.

{¶4} Clark also contends that he received ineffective assistance of trial counsel. Upon review, we conclude that defense counsel's decisions were debatable trial strategy. Clark has not demonstrated that defense counsel's performance was either deficient or prejudicial.

{¶5} Finally, Clark claims that the sentences imposed by the trial court are contrary to law. We disagree. The court below expressly stated that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. Clark's sentences are within the statutory guidelines. The sentence imposed on Count 2 was the minimum mandatory sentence available. Thus, Clark's sentences are consistent with, and not contrary to, law.

{¶6} As none of Clark's assignments of error are meritorious, the judgment of the Lake County Court of Common Pleas is affirmed.

**Substantive and Procedural Facts**

{¶7}   On August 2, 2024, the Lake County Grand Jury returned a two-count indictment charging Clark with aggravated trafficking in drugs, a felony of the third degree, in violation of R.C. 2925.03(A)(1) ("Count 1") and aggravated trafficking in drugs, a felony of the second degree, in violation of R.C. 2925.03(A)(1) ("Count 2").[1] Both counts contained forfeiture specifications pursuant to R.C. 2941.1417 and R.C. 2981.04.

{¶8}   Clark waived his right to be present at arraignment and entered a plea of not guilty. Bond was continued at $5,000 cash/surety or 10 percent.

{¶9}   On November 5, 2024, the eve of trial, Clark filed a motion to continue the trial and sought the appointment of new counsel. The case proceeded to a jury trial the following day, on November 6, 2024. Prior to the start of trial, the trial court denied both of Clark's requests.

{¶10}  The following testimony was presented at trial:

{¶11}  Reggie Davis ("Davis") was charged with a drug trafficking offense in an unrelated case in December 2023. The charges carried a mandatory prison sentence if Davis were convicted. In January 2024, agents from the Lake County Narcotics Agency ("LCNA") approached Davis and inquired if he would be interested in serving as a confidential informant. In exchange, the State agreed to recommend a lesser sentence. Davis ultimately pleaded guilty to a drug trafficking offense and was placed on community control sanctions.

---

1. This case was bound over from the Conneaut Municipal Court on April 17, 2024.

Case No. 2025-L-006

{¶12} At trial in the underlying case, Davis testified that he knew Clark for approximately five or six years. When Davis became aware that he could get methamphetamine from Clark, he informed LCNA agents.

{¶13} On March 8, 2024, Davis met with Special Agent 92 at an undisclosed location prior to conducting a controlled buy of narcotics from Clark. Davis contacted Clark to arrange the buy. Davis and his vehicle were searched prior to the transaction to ensure that he was not in possession of drugs, weapons, or money. None were found. Davis was provided $160 to purchase the drugs and a recording device was placed in his vehicle.

{¶14} Immediately after law enforcement searched Davis and his vehicle, Davis met Clark at 101 Morse Avenue in Painesville, Lake County, Ohio. Surveillance was set up in the area. Davis honked the horn to signal to Clark. Clark subsequently approached the passenger side of Davis's vehicle and got inside. Once inside the vehicle, Clark asked Davis to back out of the driveway and drive a short distance due to nearby cameras. On the short drive to 82 Chester Street, Davis gave the $160 provided by LCNA agents to Clark. Clark then gave Davis two baggies of methamphetamine.

{¶15} Davis dropped Clark off at a nearby location identified as 82 Chester Street. Davis then immediately proceeded to a predetermined location to meet with LCNA agents. The controlled buy was captured on video and introduced as State's Exhibit 2.

{¶16} Special Agent 92 followed Davis from the initial meeting location, during the buy, and until Davis returned to the meeting location. When Davis returned to the meeting location, Davis and his vehicle were searched again. Two bags of suspected drugs purchased from Clark were turned over to law enforcement. The drugs were admitted as State's Exhibit 4. The two baggies of substance were later tested by James Zachary

Case No. 2025-L-006

Dawson ("Mr. Dawson"), a forensic scientist at the Lake County Crime Lab, and were determined to be 3.39 grams of methamphetamine, and 3.32 grams of methamphetamine. Mr. Dawson testified that the bulk amount for methamphetamine is 3 grams.

{¶17} A second controlled buy took place one week later, on March 15, 2024. Davis again contacted Clark and arranged to purchase methamphetamine. Davis returned to the same predetermined meeting location prior to the controlled buy. Once again, Davis and his vehicle were searched for money, weapons, and drugs, and none were found. Similarly to the prior controlled buy, Davis was provided $160 and a recording device was placed in his vehicle.

{¶18} Immediately after law enforcement searched Davis and his vehicle, Davis proceeded to 101 Morse Avenue to meet Clark. Upon arrival, Davis honked the horn. After waiting for nearly 15 minutes, Davis exited the vehicle to try to contact Clark. Davis and the vehicle were always under surveillance. Davis returned to the vehicle to wait for Clark.

{¶19} Approximately 20 to 30 minutes after Davis arrived, Clark approached and entered Davis's vehicle. Clark and Davis drove to 616 Joughin Street in Fairport Harbor, Lake County, Ohio. Clark exited the vehicle and entered the residence at 616 Joughin Street. Davis remained in the vehicle. According to Davis, upon returning to the vehicle, he provided Clark the $160 for drugs.

{¶20} Davis and Clark then proceeded back to the Morse Avenue residence. After Clark was dropped off, Davis then immediately proceeded to a predetermined location to meet with LCNA agents. Davis was again followed by LCNA agents from the initial

Case No. 2025-L-006

meeting location, during the buy, and until Davis returned to the meeting location. The controlled buy was captured on video and introduced as State's Exhibit 3.

{¶21} When Davis returned to the meeting location, he and his vehicle were searched. The drugs purchased from Clark were turned over to law enforcement. The drugs were admitted as State's Exhibit 5. The substance was later tested by Mr. Dawson at the Lake County Crime Lab and determined to be 6.99 grams of methamphetamine.

{¶22} The residence at 616 Joughin Street is near Fairport Highschool. David Phares ("Mr. Phares"), a senior GIS application specialist from the Lake County GIS Department, utilized software to create a map of the area to determine the distance between the residence and the school.[2] Mr. Phares calculated the distance between the boundary lines of Fairport Highschool and 616 Joughin Street to be 948.8 feet. The map created by Mr. Phares was admitted as State's Exhibit 1.

{¶23} Special Agent 92 also testified that he used Google Maps to approximate the distance reaching a similar calculation and estimated that the distance between the school property and the Joughin Street residence was "around . . . nine hundred and seventy some feet."

{¶24} After the State's case-in-chief, defense counsel moved for dismissal pursuant to Crim.R. 29. The motion was denied. The defense did not call any witness or present any evidence and subsequently rested. After the defense rested, defense counsel renewed the Crim.R. 29 motion. Defense counsel's motion was overruled again.

{¶25} The jury began their deliberations on the evening of November 6, 2024. Deliberations resumed November 7, 2024. The jury found Clark guilty of both charges.

---

2. "GIS" refers to Geographic Information Systems.

Case No. 2025-L-006

As to both counts, the jury found the amount of methamphetamine was equal to or more than the bulk amount. As to Count 2, the jury also found that the offense was committed in the vicinity of a school. The trial court ordered a presentence investigation ("PSI") and a drug and alcohol evaluation. Clark's bond was revoked.

{¶26} On December 16, 2024, the trial court sentenced Clark to 18 months on Count 1 which was ordered to be served concurrently to Count 2. The trial court imposed an indefinite mandatory prison term of a minimum of two years and a maximum of three years on Count 2. The trial court waived the mandatory fines and ordered the forfeiture of the methamphetamine. Clark now appeals.

## The Appeal

{¶27} Clark appeals and raises four assignments of error for review:

> [1.] The jury's finding of guilty and Clark's subsequent convictions for aggravated trafficking in drugs were contrary to the manifest weight of the evidence; therefore, Clark's conviction for said counts should be overturned, and Clark should be remanded to the trial court for a new trial.

> [2.] Clark's trial counsel was ineffective in Clark's defense as a result of not calling any witnesses and failing to adequately select an impartial jury.

> [3.] The Court's denial of Defendant's Rule 29 Motion should be overturned, and Clark should be remanded to the trial court for a new trial.

> [4.] The trial court erred on December 16, 2024 because its sentence was contrary to law and an abuse of discretion.

{¶28} We address Clark's assignments of error out of order, beginning with his first and third assignments of error as they are interrelated.

Case No. 2025-L-006

**Crim.R. 29 - Sufficiency of Evidence & Manifest Weight**

{¶29} In his first assignment of error, Clark asserts that his convictions are against the manifest weight of the evidence. Clark also argues, in his third assignment of error that the trial court erred when it denied his motion for acquittal pursuant to Crim.R. 29 finding that the State presented sufficient evidence to support his convictions.

{¶30} On appeal, where an appellant challenges both the sufficiency and the manifest weight of the state's evidence, the appellate court need only address the manifest weight argument. *See State v. Dykes*, 2023-Ohio-4378, ¶ 6 (11th Dist.), quoting *State v. Masters*, 2020-Ohio-864, ¶ 17 (11th Dist.). The determination that a verdict is not against the manifest weight necessarily includes a finding that the conviction was supported by sufficient evidence. *Id.*

{¶31} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The

Case No. 2025-L-006

discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

{¶32} Clark was convicted of two counts of aggravated trafficking in drugs, specifically methamphetamine, a schedule II substance, in violation of R.C. 2925.03(A)(1).

{¶33} R.C. 2925.03(A)(1) provides that "[n]o person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance or a controlled substance analog." The offense involved drugs equal to or in excess of the bulk amount but was less than five times the bulk amount. Thus, the offense constituted a felony of the third degree. R.C. 2925.03(C)(1)(c). The second charged offense was elevated to a second-degree felony because the transaction occurred in the vicinity of a school. *Id.*

> "An offense is 'committed in the vicinity of a school' if the offender commits the offense on school premises, in a school building, or within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed on school premises, in a school building, or within one thousand feet of the boundaries of any school premises."

R.C.2925.01(P).R.C 2925.01(R)(1) defines "[s]chool premises" in relevant part as "[t]he parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed."

{¶34} Clark argues on appeal that Davis was biased and that his testimony was not credible. Clark further asserts that the video did not capture the drug transaction as Davis's arm blocked the camera lens and the camera was angled toward the roof of a vehicle. Clark further alleges that officers did not conduct a thorough search of Davis prior

Case No. 2025-L-006

to the controlled buys, and that Davis had the drugs prior to meeting with Clark. Clark asserts that Davis was dishonest about what really occurred to receive a favorable recommendation in Davis's pending criminal case. Clark also claims that the lack of DNA evidence tying him to the drugs illustrates that the State did not meet its burden of persuasion or its burden of production. We disagree.

{¶35} After viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found Clark knowingly trafficked methamphetamine. We further find that any rational trier of fact could have found Clark knowingly trafficked methamphetamine in the vicinity of a school. After reviewing the records and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice.

{¶36} Despite the lack of DNA evidence and the video not capturing the exchange of drugs between Clark and Davis, the evidence and testimony were sufficient to support a conviction and were consistent with the manifest weight of the evidence. Both Davis and Special Agent 92 testified that Davis and his vehicle were searched prior to the controlled buys. Officers indicated that Davis did not have any drugs on his person, and that no drugs were inside of his vehicle. Law enforcement had a line of sight on Davis immediately after the search and maintained that line of sight on him and his vehicle for the entirety of the transactions, until Davis returned to the predetermined meeting location. After meeting with Clark on both occasions, Davis no longer had the $160 dollars provided to him, and instead, he had methamphetamine. Special Agent 92 and Mr.

Phares testified that the second buy at the 616 Joughin Street, the residence was within 1,000 feet of the boundaries of the school.

{¶37} The jury was aware that Davis had made a deal with law enforcement to serve as a confidential informant in exchange for a favorable recommendation in Davis's pending criminal case. The jury could decide how much weight to give Davis's testimony. We conclude that the State met its burden of persuasion as to the trafficking charges. As Clark's convictions are not against the weight of the evidence, the convictions are necessarily supported by sufficient evidence.

{¶38} As such, Clark's first and third assignments of error are meritless.

### Ineffective Assistance of Counsel

{¶39} In his second assignment of error, Clark alleges that he received ineffective assistance of counsel at trial. Specifically, he asserts that defense counsel failed to present any witnesses on his behalf and failed to adequately conduct jury selection. We disagree.

{¶40} In order to support a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984). "[A] defendant claiming ineffective assistance of counsel 'must show that counsel's representation fell below an objective standard of reasonableness.' *Id*. at 687-688. 'He must also show that the ineffective representation prejudiced his case: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" *State v. Burke*, 2002-Ohio-5310, ¶ 6, quoting *Strickland* at 694. "Under

*Strickland*, a court must apply 'a heavy measure of deference to counsel's judgments,' [*Strickland* at] 691, and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' *Id*. at 689." *Burke* at ¶ 7. Because a defendant must satisfy both prongs, failure to demonstrate either prong of *Strickland* can be dispositive.

{¶41} "'The decision to call witnesses is within the province of counsel's trial tactics.'" *State v. Smith*, 2023-Ohio-1533, ¶ 23 (11th Dist.), quoting *State v. McKay*, 2002-Ohio-3960, ¶ 43 (11th Dist.). Even if a better strategy is available, debatable strategic and tactical decisions will not form the basis for a claim of ineffective assistance of counsel. *Id.*, quoting *State v. Phillips*, 74 Ohio St.3d 72, 85. Unless prejudice is shown, the failure to call a witness will not be grounds for a claim of ineffective assistance of counsel. *Id.*, citing *McKay* at ¶ 42, citing *State v. Williams*, 74 Ohio App.3d 686, 695 (8th Dist. 1991).

{¶42} Clark's argument that trial counsel should have called unidentified witnesses to testify on his behalf presumes facts that are not in the record. We cannot assume these unidentified individuals could testify to a material fact in this case. The videos of the controlled buys do not show any other individual present except for Clark and Davis. It is unclear what, if anything, any other witness could have provided. Because the record does not contain any evidence to suggest that additional witnesses could or would have testified to any fact inconsistent with the State's evidence, trial counsel's failure to call such unidentified witnesses, if they exist, amounts to a matter of trial tactics. "We will not second guess debatable trial tactics when determining whether trial counsel rendered ineffective assistance of counsel." *State v. Perez*, 2025-Ohio-509, ¶ 60 (11th Dist.).

{¶43} Clark also argues that he could have testified on his own behalf. Clark had the opportunity to be a witness in his own defense. Without any indication in the record to the contrary, we must assume that Clark knowingly exercised his privilege against self-incrimination. Anything Clark could have testified to at trial is pure speculation and cannot serve as a basis for an ineffective assistance of counsel claim. *See State v. Carter*, 115 Ohio App.3d 770, 776 (7th Dist. 1996); *see also State v. Weatherspoon*, 2008-Ohio-2345, ¶ 17 (8th Dist.) (concluding that where the appellant failed to state what testimony he would have provided and did not show that trial counsel's advice was flawed and prejudicial, appellant cannot prove his counsel was ineffective).

{¶44} Clark next argues that his trial counsel was ineffective for failing to adequately conduct jury selection. Specifically, Clark argues that his counsel "waived one of his peremptory challenges instead of using it to excuse a potential biased juror."

{¶45} Clark's reliance on *State v. Martin*, 2017-Ohio-7556, is misplaced. In *Martin,* the Supreme Court of Ohio concluded that Martin did not meet his burden under *Strickland* and failed to establish that his trial counsel was ineffective. The Court concluded:

> "Decisions on the exercise of peremptory challenges are a part of trial strategy * * *." *State v. Goodwin*, 84 Ohio St.3d 331, 341, 703 N.E.2d 1251 (1999). These are judgment calls—subjective by nature, often based on intuition and firsthand observation by trial counsel that a reviewing court cannot replicate. Hence, it is seldom possible to find that counsel's decision to exercise or not exercise peremptory challenges falls below an objective standard of reasonable representation. *Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, at ¶ 83; *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 214, 216. Martin makes no such showing here.

*Id.* at ¶ 73.

Case No. 2025-L-006

{¶46} Here, Clark asserts that his defense counsel should have used the remaining peremptory challenge during voir dire. Clark does not identify any juror in his brief that he believes counsel should have sought to remove. Thus, Clark's broad assertion does not meet the prongs of *Strickland*, and Clark has failed to establish that his trial counsel was ineffective.

{¶47} During oral arguments, Clark argued, for the first time, that he should have been advised of his right to represent himself when he requested that new counsel be appointed to represent him. In *State v. Knuff*, 2024-Ohio-902, the Supreme Court of Ohio has recognized that:

> '[A] defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so.' *State v. Gibson*, 45 Ohio St.2d 366, (1976), paragraph one of the syllabus, citing *Faretta v. California*, 422 U.S. 806 (1975). But this right—called a *Faretta* right—must be "'timely and unequivocally asserted'" or else it is waived. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.3d 81, ¶ 38, quoting *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir.1990).

*State v. Knuff*, 2024-Ohio-902, ¶ 54.

{¶48} There is nothing in the record to indicate that Clark requested to proceed pro se. Clark did not direct this court to any authority to support the position that a trial court is required to advise a defendant, upon a request for new counsel, that he can assert his right to self-representation instead.

{¶49} As such, Clark's second assignment of error is without merit.

Case No. 2025-L-006

**Sentencing**

{¶50} In his fourth and final assignment of error, Clark argues that his sentence is contrary to law. Specifically, Clark asserts that the trial court did not consider the factors enumerated in R.C. 2929.12. We disagree.

{¶51} We review felony sentencing pursuant to R.C. 2953.08(G)(2). *See State v. Lamb*, 2023-Ohio-2834, ¶ 9 (11th Dist.); *State v. Meeks*, 2023-Ohio-988, ¶ 11 (11th Dist.); *State v. Glover*, 2024-Ohio-5195. After an appellate court reviews the record and sentence on appeal, the court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand . . . if it clearly and convincingly finds . . . [t]hat the sentence is . . . contrary to law." R.C. 2953.08(G)(2)(b). "'[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.'" *Lamb* at ¶ 10, quoting *State v. Shannon*, 2021-Ohio-789, ¶ 11 (11th Dist.).

{¶52} "The Supreme Court of Ohio has held that while 'R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions. But, R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.'" *State v. Feidler*, 2024-Ohio-2040, ¶ 10 (11th Dist.), *appeal not accepted*, 2024-Ohio-4501, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 28.

Case No. 2025-L-006

{¶53}  Clark was convicted of aggravated trafficking in drugs, a felony of the third degree, and aggravated trafficking in drugs, a felony of the second degree. R.C. 2925.03(C)(1)(c).

{¶54}  The statutory terms are outlined as follows:

> For a felony of the second degree committed on or after March 22, 2019, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code. . . .

R.C. 2929.14(A)(2)(a).

> For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

R.C. 2929.14(A)(3)(b).

{¶55}  It is clear from our review of the record that Clark's sentence is within the statutory range for the offense. Clark does not dispute that the trial court specifically mentioned both R.C. 2929.11 and R.C. 2929.12. Indeed, the trial court stated both at the sentencing hearing and in its judgment entry that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. The trial court specifically stated at the sentencing hearing that "[a]s for the factors in [R.C.] 2929.12 [sic], nothing stands out factually about the case based on my consideration of the evidence at trial that makes the offense any more or less serious than what would normally constitute these two offenses of the degrees for which the Defendant is charged."

{¶56}   Clark also argues that the trial court should have considered that the State induced the offense, and that Clark was acting under strong provocation which the confidential informant and/or the State created, factors that are enumerated in R.C.2929.12(C)(1)&(2). Clark essentially asks this Court to reweigh the evidence and determine that his sentences are inconsistent with R.C. 2929.11 and 2929.12. Pursuant to *Jones*, this court is not permitted to do so. "A 'trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion.' *State v. DelManzo*, 2008-Ohio-5856, ¶ 23 (11th Dist.). A sentencing court fulfills its duties under R.C. 2929.11 and 2929.12 by stating that it considered them. *State v. DeLuca*, 2021-Ohio-1007, ¶ 18 (11th Dist.)." *State v. Miller*, 2025-Ohio-339, ¶ 21 (11th Dist.).

{¶57}   Here, the trial court imposed the minimum mandatory sentence available to it on Count 2. The court below expressly stated that it considered the purposes and principles of sentencing and the recidivism and seriousness factors. Although not required, the trial court discussed several recidivism factors. Specifically, the trial court noted that Clark had a prior criminal history but had led a law-abiding life for a significant period of time. The court below also noted that Clark violated the conditions of his bond throughout the pendency of the case by continually using drugs. Thus, Clark's sentences are not clearly and convincingly contrary to law.

{¶58}   Clark's fourth and final assignment of error is also meritless.

**Conclusion**

{¶59}   For the reasons set forth above, we affirm the judgment of the Lake County Court of Common Pleas.


MATT LYNCH, J.,

JOHN J. EKLUND, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE ROBERT J. PATTON

JUDGE MATT LYNCH,
concurs

JUDGE JOHN J. EKLUND,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-006