[Cite as *State v. Edwards*, 2013-Ohio-4342.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


State of Ohio,                                     :

      Plaintiff-Appellee,              :

                                          **No. 12AP-992**

v.                                                :       (C.P.C. No. 10CR-05-2864)

Tommy L. Edwards,                                 :       (REGULAR CALENDAR)

      Defendant-Appellant.             :


D E C I S I O N

Rendered on September 30, 2013


*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Yeura R. Venters*, Public Defender, and *David L. Strait*, for appellant.


APPEAL from the Franklin County Court of Common Pleas.

SADLER, J.

{¶ 1} Defendant-appellant, Tommy L. Edwards, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of possession of marijuana. For the following reasons, we affirm the judgment of the trial court.

I. BACKGROUND

{¶ 2} Appellant was indicted on one count of possession of marijuana, a fifth-degree felony, in violation of R.C. 2925.11. Appellant filed a motion to suppress the evidence of marijuana seized at his home as well as statements he made to officers after his arrest because he claims they were the result of a search based on a warrant that

lacked probable cause. Appellee filed a memorandum in opposition, and the trial court held a hearing on the motion.

{¶ 3} Therein, appellee presented the following evidence. On July 11, 2008, Sergeant Duane Mabry of the Columbus Division of Police was assigned to the "Zone 2 summer strike force initiative" when he received a phone call from another officer, asking him to draft a search warrant for 3178 Weirton Drive. (Nov. 7, 2011 Motion Tr., 8.) According to Mabry, after receiving information that drugs were being sold out of that residential address, officers began surveilling the house. Mabry stated on three occasions that individuals were observed entering the home and leaving after staying only a few minutes. Mabry stated this behavior was consistent with "drug activity at a drug house." (Tr. 11.) According to Mabry, officers at the scene conducted traffic stops on all three individuals and recovered over eight pounds of marijuana.

{¶ 4} According to Mabry, an hour later, Jimmy Berry was stopped after leaving the Weirton Drive location and in Berry's possession was a gun, two pounds of marijuana, and a digital scale. Mabry testified Berry told officers he was sent to the home on Weirton Drive by appellant and instructed to "clean the house out." (Tr. 13.) Based on the encounter with Berry, officers entered the home to prevent the destruction of evidence, insured evidence was not being destroyed, left the home, and waited for Mabry's arrival. According to Mabry, he finished drafting the warrant for Weirton Drive, had a judge sign it, and executed the warrant at 9:35 a.m.

{¶ 5} Detective Ty Downard is a narcotics detective for the Reynoldsburg Police Department and was assigned to investigate appellant's home at 220 Chatterly Lane. According to Downard, the Reynoldsburg Police Department received an anonymous tip on January 16, 2008, that appellant was selling "pounds of marijuana" on the east side of Columbus and Reynoldsburg and resided at 220 Chatterly Lane. (Tr. 32.) He further testified that "sometime later" the Columbus Police Department informed him of the surveillance and search of the Weirton Drive residence, as well as Berry's statement to police that appellant had instructed him to pick up marijuana from the Weirton Drive location and that appellant has sold marijuana for years. (Tr. 32.) After receiving the above tip and information, Downard stated he began conducting trash pulls at appellant's home. According to Downard, the first trash pull occurred on September 19, 2008, and

he collected what appeared to be marijuana stems, seeds, and "shake."[1]  (Tr. 34.) According to Downard, he field tested the stems and seeds and it came back positive for marijuana.

{¶ 6}  Downard testified he conducted surveillance on September 21, 2008 and observed appellant exit and enter the residence. Downard stated appellant's vehicle was registered to the 220 Chatterly Lane address.  According to Downard, he conducted a second trash pull on September 26, 2008 and discovered marijuana stems and seeds, four roaches, and a letter of residence for 220 Chatterly Lane connecting the trash to appellant. Based on all of the above information and appellant's criminal history,[2] Downard obtained a search warrant for narcotics.

{¶ 7}  The suppression hearing concluded with closing statements.  Appellant argued both of the search warrants were not "particularized enough to be sufficient" and were overbroad.  (Tr. 50.)  Specifically, appellant argued that the Weirton Drive warrant failed because the premises were "searched" ahead of time, and the Chatterly Lane warrant failed because its probable cause justification was based off information obtained at Weirton Drive.[3]  Appellant further argued the Chatterly Lane warrant was intentionally misleading.   In opposition, appellee argued exigent circumstances existed for the protective sweep at the Weirton Drive home and that the warrants did not contain misleading information.  Finally, appellee argued, based on all the evidence presented, there was probable cause for each warrant.

{¶ 8}  The trial court denied appellant's motion to suppress and held that probable cause existed for the issuance of both search warrants.  The court reasoned probable cause was established for the Weirton Drive warrant when officers set up surveillance and within hours had stopped four individuals who visited the home and collected over ten pounds of marijuana.  The trial court also held that, based on Berry's statements, the doctrine of exigencies applied and justified the officers' initial protective sweep of the Weirton Drive home prior to obtaining and executing a search warrant.

---

[1] According to Downard, "shake" is what remains after a cigar's tobacco content is replaced with marijuana.
[2] Downard testified appellant had been convicted of trafficking in marijuana, possession of marijuana, preparation of drugs for sale, weapons under disability, domestic violence, assault, aggravated menacing, criminal damaging, and telephone harassment.
[3] Appellant does not challenge the protective sweep entry into the Weirton Drive location on appeal.

{¶ 9}   The trial court held probable cause also existed for the Chatterly Lane home search, reasoning that, though each fact in the warrant individually would not be enough to satisfy probable cause, the totality of the facts alleged were sufficient.

{¶ 10} Appellant filed a second motion to suppress, alleging the statements he made to Sergeant Shane Mauger of the Reynoldsburg Police Department after the search of his residence were taken in violation of his constitutional rights. Appellee filed a memorandum in opposition, and the trial court held a hearing on the motion.

{¶ 11} At the second hearing, appellee presented the testimony of Mauger and Downard. According to Mauger, he conducted a tape recorded interview of appellant at his home while the search was coming to a close. Mauger testified that he advised appellant of his constitutional rights prior to any questioning. Mauger stated appellant must have indicated he understood his rights or he would not have continued with the interview. Appellant's response to Mauger's question, "[d]o you understand your rights" was inaudible on the audio tape. The suppression hearing concluded with closing arguments.

{¶ 12} The trial court denied appellant's motion holding "[b]ased on the totality of these circumstances I find that the Defendant indicated that he understands his rights." (Tr. 165.)   The holding was based on Mauger's testimony that he would not have continued with questioning if appellant had not in some way indicated he understood his rights and that, from the court's own interactions with appellant, he is an intelligent man who "is not shy about either invoking his rights or speaking his mind when he chooses to." (Tr. 165.)[4]  Having overruled both of appellant's motions to suppress, the case continued to trial.

{¶ 13} Relevant to this appeal, the following evidence was adduced from the appellee's case-in-chief. Mauger was the team leader for the September 30, 2008 search of Chatterly Lane. According to Mauger, SWAT approached the home and knocked and announced their intention to enter. Once SWAT entered the home, Mauger testified his team secured the location and began executing the search warrant. Mauger stated he

---

[4] Appellant does not appeal this ruling by the trial court.

seized a "Wal-Mart bag" containing nine smaller bags of marijuana, a digital scale, baggies, and a letter of residence connecting the trash to appellant's home. (Tr. 233.)

{¶ 14} Appellee's final witness was Shervonne Bufford, a forsensic drug chemist employed by the Ohio Attorney General's Office Bureau of Criminal Investigation. According to Bufford, she tested and weighed what officers assumed was marijuana seized at appellant's home. Bufford stated she used the "[h]ypergeometric sampling" method in testing for the presence of marijuana in the nine bags which, in this case, resulted in her testing seven of the nine bags for the presence of marijuana. (Tr. 261.) According to Bufford, the hypergeometric sampling method is a commonly accepted practice in the scientific field and only requires the testing of a specific amount of the sample and then applies those results to the untested remainder, as long as the untested remainder is "homogenous" or looks consistent. (Tr. 307.) Bufford testified to a reasonable degree of scientific certainty that the nine bags weighed 212.0 grams and contained marijuana or cannabis.

{¶ 15} On cross-examination, Bufford was asked to add up the weights of the seven bags actually tested for the presence of marijuana under the hypergeometric sampling method, excluding the two untested bags. Bufford testified the weight of the seven bags actually tested for the presence of marijuana was 161.36 grams. Appellant's counsel then began questioning Bufford on the Ohio legislature's legal definition of marijuana, specifically, whether the legislature intended to exclude the stalk and stem of the plant from that definition. Appellee objected, arguing the legal definition of marijuana did not require the separation of the stalk and stem, and the jury should not be privy to this line of questioning. The trial court recessed and heard testimony from Bufford on this issue outside the hearing of the jury. At the conclusion of the testimony, the court instructed both counsel to conduct research on the issue.

{¶ 16} After researching the issue, the parties agreed that the Supreme Court of Ohio's decision in *State v. Wolpe*, 11 Ohio St.3d 50 (1984), does not require the separation of the stems for purposes of determining weight; however, appellant argued *Wolpe's*

holding, as applied, is unconstitutional.[5]   The trial court disagreed and sustained appellee's objection.

{¶ 17} After the testimony of Bufford, appellee rested.  Appellant moved for a Crim.R. 29 judgment of acquittal, which the trial court denied.  Appellant rested without putting on evidence, and the case was submitted to the jury.

{¶ 18} The jury returned a verdict finding appellant guilty of one count of possession of marijuana.  Appellant was sentenced and this appeal followed.

## II.  ASSIGNMENTS OF ERROR

{¶ 19} Appellant brings the following two assignments of error for our review:

> I. The trial court erred in denying the motion to suppress because the affidavit supporting the search warrant neither established probable cause nor could be relied on in good faith by the searching officers.

> II. The trial court erred when it denied a Rule 29 Motion for Judgment of Acquittal when the chemist used the hypergeometric sampling method to determine the presence of drugs and the undisputed evidence showed that the quantity of drugs thus identified was within the statistical margin of error of the sampling method.  In such circumstances, the State has necessarily failed to prove felony-level quantity beyond a reasonable doubt and the conviction denies the defendant due process of law and a fair trial.

> In the alternative, the jury's verdict was against the manifest weight of the evidence.

## III.  DISCUSSION

### A.  First Assignment of Error

{¶ 20} In his first assignment of error, appellant challenges the denial of his motion to suppress.  Specifically, appellant argues the anonymous tip was stale, in that it was eight months between the tip and the search and that the search warrant for his residence lacked sufficient indicia of drug trafficking to establish probable cause, or in the alternative, officers lacked good faith in executing the warrant.  We disagree.

---

[5] Appellant does not pursue this issue on appeal.

{¶ 21} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility." *Columbus v. Body,* 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence." *Id.,* citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the reviewing court must then independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard." *Id.*, citing *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 22} In determining the sufficiency of probable cause from an affidavit submitted to support a search warrant, the issuing judge must look to the totality of the circumstances set forth in the affidavit submitted and determine whether probable cause exists that contraband or evidence of a crime would be found in a particular place. *State v. Garner,* 74 Ohio St.3d 49, 62 (1995). By contrast, a reviewing court should not conduct a de novo review of a judge's determination of probable cause, but review the warrant to ensure that the judge had a substantial basis for concluding that probable cause existed, according "great deference to the judge's determination of the existence of probable cause." *Id.* at 62.

{¶ 23} "Accordingly, the standard for probable cause demands only a demonstration that a fair probability of criminal activity exists—not a prima facie demonstration of criminal activity." *State v. Ingold,* 10th Dist. No. 07AP-648, 2008-Ohio-2303, ¶ 19. "[T]he focus of the probable cause inquiry is the *totality of the circumstances* presented in the affidavit, not each component standing alone." (Emphasis sic.) *State v. Robinson*, 7th Dist. No. 10 CO 37, 2011-Ohio-6639, ¶ 23.

{¶ 24} Appellant first argues his case is analogous to *United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir.1993), in which the court found a lack of probable cause to search the home of the defendant. In *Leake*, officers received an anonymous tip from a tradesman who claimed to have completed work in the defendant's home. The informer

provided the defendant's address and stated he smelled and observed large bales of marijuana. Based on this tip, officers conducted surveillance of the defendant's home. Officers observed the home for two nights and noticed nothing out of the ordinary. The officers applied for and were granted a warrant to search defendant's home. They discovered hundreds of pounds of marijuana. The court granted defendant's motion to suppress the seized marijuana, noting "[t]he supporting affidavit was too vague and Detective Murphy's limited two-night surveillance was insufficient to verify important elements of the anonymous caller's information." *Id.* at 1365.

{¶ 25} We find *Leake* distinguishable from this case. *Leake* consisted of a search warrant based on a single anonymous tip where the only attempt at corroborating the tip was verification by police that the defendant actually resided at the address given. There was no other corroborating information obtained or presented by the prosecution. Comparatively, Downard's investigation was based on two tips, only one of which was anonymous. Both sources of information identified appellant as a drug trafficker. Additionally, two trash pulls at the appellant's residence revealed illegal drug activity at the home, specifically, marijuana stems and seeds, a marijuana roach, three empty blunt tube wrappers, cigar blunt shake, and a letter establishing the trash came from appellant's residence. Downard also gathered background information about appellant, including his connection to events at Weirton Drive where law enforcement seized over ten pounds of marijuana, and his criminal history, which includes trafficking in drugs.

{¶ 26} We find the Seventh District court's decision in *Robinson* instructive. In *Robinson*, officers executed a search warrant based on information supplied by two informants that the defendant was trafficking in drugs. One informant stated he obtained drugs from the defendant who lived on the "east end." Another informant stated he purchased drugs from the defendant over 20 times. Neither tip specified if the defendant sold drugs out of his home or elsewhere. Officers conducted four trash pulls at the defendant's residence, which resulted in the collection of plastic bags with the corners cut off, a napkin containing marijuana residue, a hypodermic needle, a vial containing a small amount of an illegal steroid, documents linking defendant and the trash to the residence, marijuana stems and residue, and Western Union money transfer documents from defendant. Like appellant, the defendant in *Robinson* moved to suppress the evidence

arguing the information supplied by informants relating to drug activity was stale and uncorroborated, even considering the trash pulls. In rejecting the defendant's position and finding probable cause existed for the search warrant, the Seventh District stated, "[c]ourts have held that even a single trash pull conducted just prior to the issuance of the warrant corroborating anonymous tips and *background information* involving drug activity will be sufficient to establish probable cause." (Emphasis added.) *Id.* at ¶ 21.

{¶ 27} Several other districts have come to similiar conclusions when analyzing whether sufficient probable cause existed for a search warrant when a source of information, alleged to be stale or unreliable, is corroborated by illegal drug activity gleaned from a trash pull. *State v. Quinn*, 12th Dist. No. CA2011-06-116, 2012-Ohio-3123 (probable cause existed to search the home when trash pulls revealing illegal drug activity corroborated anonymous tip that defendant possessed drugs and was selling drugs); *State v. McGorty*, 5th Dist. No. 2007CA00257, 2008-Ohio-2643 (probable cause existed to search the home when trash pulls revealing illegal drug activity corroborated anonymous tip that defendant was cultivating drugs in his home); *State v. Pustelnik,* 8th Dist. No. 91779, 2009-Ohio-3458, ¶ 23-26 (trash pulls revealing illegal drug activity corroborated anonymous tips of drug activity in the home).

{¶ 28} Appellant argues the anonymous tip was stale because it was eight months old, and there was insufficient corroborating evidence to support a search warrant based on drug trafficking. We disagree. Like *Robinson*, the search warrant at issue is based, in part, on the corroborating information obtained by law enforcement from trash pulls and other background information after receiving an anonymous tip. Here, the Reynoldsburg Police Department received an anonymous tip on January 16, 2008 that appellant resides at 220 Chatterly Lane and sells pounds of marijuana on the east side of Columbus and Reynoldsburg. An Ohio Law Enforcement Gateway background check confirmed appellant resides at 220 Chatterly Lane. Officers also discovered relevant background information. Additionally, statements of Berry also connect appellant to the events at the Weirton Drive address, discussed above, where officers seized over ten pounds of marijuana from four different people, one of which was Berry.

{¶ 29} Berry told officers that appellant contacted him and asked him to pick up a case of marijuana from Weirton Drive and that appellant has been selling marijuana for

years and has been in trouble in the past for selling marijuana. Officers checked Berry's phone and the last call was from "Tommy." Also included in the affidavit was the results of two trash pulls conducted by Downard at appellant's 220 Chatterly Lane home. Downard found evidence of marijuana stems and seeds, a marijuana roach, three empty blunt tube wrappers, cigar blunt shake, and a letter of residence for 220 Chatterly Lane. A field test of the suspected substance was positive for marijuana. Downard also observed appellant exit and re-enter the home and a vehicle registered to appellant parked at the home.

{¶ 30} Based on the above, we find the issuing judge had a substantial basis to conclude probable cause existed to issue a search warrant.

{¶ 31} Because we have held that the search warrant at issue was based on probable cause, we need not address appellant's assignment of error to the extent that it challenges the search warrant was not relied upon by the officers in good faith.

{¶ 32} Accordingly, we find the trial court properly denied appellant's motion to suppress, and we overrule appellant's first assignment of error

## B. Second Assignment of Error

{¶ 33} In his second assignment of error, appellant contends both that the trial court erred in denying his Crim.R. 29 motion for acquittal or, in the alternative, the jury's verdict was against the manifest weight of the evidence.

{¶ 34} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Reddy,* 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp,* 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. We thus review the trial court's denial of appellant's motion for acquittal using the same standard applicable to a sufficiency of the evidence review. *Id.,* citing *State v. Darrington,* 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 35} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh,* 90 Ohio St.3d 460, 484 (2001).

{¶ 36} In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but, whether, if believed, the evidence supports the conviction. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston,* 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

{¶ 37} Appellant's sufficiency argument relies on *State v. Coppernoll,* 6th Dist. No. WM-07-010, 2008-Ohio-1293. The crux of appellant's argument is that the hypergeometric sampling method used in *Coppernoll* and in this case could not prove to a reasonable degree of scientific certainty that a sufficient quantity of the substance seized from appellant's home is marijuana.

{¶ 38} Appellant was convicted of possession of marijuana, a fifth-degree felony, as defined in R.C. 2925.11, which states:

> (A) No person shall knowingly obtain, possess, or use a controlled substance * * * (C)(3)(c) [i]f the amount of the drug involved equals or exceeds two hundred grams but is less than one thousand grams.

{¶ 39} The focus of appellant's sufficiency argument is the quantity requirement of R.C. 2925.11. Appellant cites *Coppernoll* for the assertion that the hypergeometric sampling method used by Bufford results in a "95 percent confidence level that 90 percent of the samples will be correctly identified." *Id.* at ¶ 6. Based on *Coppernoll*, appellant argues he cannot be convicted of possessing more than 200 grams of marijuana. We disagree.

{¶ 40} We first point out that appellant cites testimony from *Coppernoll* and not a standard or test relied upon by that court. Accordingly, we do not adopt appellant's interpretation of *Coppernoll*. We have previously accepted the hypergeometric or random sampling method of testing and determined "evidence of the random-sampling method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested." *State v. Parsley*, 10th Dist. No. 09AP-612, 2010-Ohio-1689, ¶ 39; *State v. Samatar*, 152 Ohio App.3d 311, 2003-Ohio-1639 (10th Dist.); *State v. Smith*, 10th Dist. No. 97APA05-660 (Dec. 23, 1997).

{¶ 41} Here, based on the evidence presented, a reasonable jury could find all of the marijuana collected at appellant's residence was in fact marijuana. According to Bufford, she tested and weighed a substance seized at appellant's home for the presence of marijuana. Bufford testified she used the "hypergeometric sampling" method which is a commonly accepted practice. Bufford stated the substance in the seven tested bags was homogenous to the substance in the two untested bags and ultimately testified to a reasonable degree of scientific certainty that the nine bags at issue contained 212.0 grams of marijuana or cannabis. Based on the evidence presented at trial, a jury could infer appellant possessed 212.o grams of marijuana.

{¶ 42} Accordingly, viewing the evidence in a light most favorable to the state, we conclude appellant's possession of marijuana conviction is supported by legally sufficient evidence.

{¶ 43} Appellant also argues that his conviction for possession of marijuana is against the manifest weight of the evidence. Appellant's sole argument is an improper application of the hypergeometric sampling method.

{¶ 44} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. However, in engaging in this weighing, the appellate court must bear in mind the factfinder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. *See State v. DeHass*, 10

Ohio St.2d 230 (1967), paragraph one of the syllabus. The power to reverse on manifest-weight grounds should only be used in exceptional circumstances when "the evidence weighs heavily against the conviction." *Thompkins* at 387.

{¶ 45} A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831. The trier of fact is in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503. Consequently, although appellate courts must sit as a "thirteenth juror" when considering a manifest-weight argument, it must also give a great deference to the trier of fact's determination on the credibility of the witnesses. *State v. Covington,* 10th Dist. No. 02AP-245, 2002-Ohio-7037.

{¶ 46} Appellant argues only the contents of the bags actually tested for the presence of marijuana can be used as evidence in this case. Appellee presented the testimony of Bufford who, as stated above, concluded to a reasonable degree of scientific certainty that the nine bags weighed 212.0 grams and contained marijuana or cannabis. As trier of fact, the jury was free to believe or disbelieve all or any of the testimony presented. *State v. Matthews,* 10th Dist. No. 11AP-532, 2012-Ohio-1154, ¶ 46, citing *State v. Jackson,* 10th Dist. No. 01AP-973, 2002-Ohio-1257. Thus, the jury could have rejected Bufford's testimony as untruthful or disregarded the application of the hypergeometric sample method and found only 161.36 grams of marijuana (the weight of the bags actually tested) was in appellant's possession. Because they did not, and instead convicted appellant of possession of marijuana, is not a reason to hold the jury clearly lost its way.

{¶ 47} The jury is in the best position to determine the credibility of each witness by taking into account inconsistencies, as well as witnesses' manner of testifying and demeanor. The state presented competent and compelling evidence satisfying the statutory requirements of possession of marijuana outlined above. We cannot conclude this record presents a scenario where the jury clearly lost its way. Consequently, appellant's conviction for possession of marijuana is not against the manifest weight of the evidence.

{¶ 48} Accordingly, we overrule appellant's second assignment of error.

## IV. CONCLUSION

{¶ 49} Having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

KLATT, P.J., and McCORMAC, J., concur.

McCORMAC, J., retired, formerly of the Tenth Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____