[Cite as *State v. Stepler*, 2026-Ohio-55.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

HENRY LEON STEPLER,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 BE 0015

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 135

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, *Atty. Jacob A. Manning,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Robert T. McDowall Jr.*, Robert T. McDowall Co LLC for Defendant-Appellant.

Dated: January 8, 2026

**Robb, P.J.**

{¶1}   Defendant-Appellant Henry Leon Stepler appeals after being convicted in the Belmont County Common Pleas Court.  He challenges both the sufficiency of the evidence and the weight of the evidence supporting the jury verdict on the aggravated drug trafficking count (as well as the merged aggravated drug possession count).  He focuses on the forensic scientist's decision to refrain from testing the substance in every baggie recovered during the traffic stop.  For the following reasons, Appellant's conviction is upheld, and the trial court's judgment is accordingly affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2}   On September 5, 2024, Appellant was indicted on four counts.  Before the jury trial, he pled guilty to the fourth count, possession of a fentanyl-related compound, a fourth-degree felony where the weight was 1.3 grams.  (1/13/25 J.E.).  The third count, having a weapon under disability, was dismissed after law enforcement discovered it would be unsafe to test-fire the shotgun to prove operability.  (Tr. 4-5).  This left for trial the first two counts, which both involved methamphetamine (meth).

{¶3}   Both count one aggravated drug possession and count two aggravated drug trafficking were second-degree felonies due to the amount of meth being at least 5 times the bulk amount (of 3 grams) but less than 50 times the bulk amount.  A forfeiture specification for the shotgun was attached to the trafficking count.

{¶4}   At trial, a police officer testified he was patrolling on June 5, 2024, when he saw a minivan traveling north on State Route 7 through Bridgeport while committing multiple marked lane violations as the van cut from the far right lane to the left turn lane.  (Tr. 212).  When the officer ran the van's registration, he learned the 65-year-old owner had a suspended or invalid operator's license.  (Tr. 212, 243).

{¶5}   A traffic stop was initiated.  The officer's bodycam video depicted Appellant in the driver seat, a female in the front passenger seat, a female in the back seat behind the driver, and a male in the back seat behind the passenger.  (St.Ex. 6).  The officer ran their names through his computer and then asked Appellant to exit the van.

{¶6}   In answering questions about his license, Appellant said he went to court in Ravenna and believed the judge issued an order to the BMV.  When it was noted his

<u>Case No. 25 BE 0015</u>

address was listed as Akron, he said he was looking at housing and getting ready to move to Steubenville. Appellant gave consent to search the van, and the officer ordered the passengers out.

{¶7} While watching the female in the back seat retrieve a dog (from behind her position in the van), the officer noticed a small digital scale on the floor area behind the front passenger seat. There was a white residue remaining on the scale. (Tr. 213).

{¶8} In the seat pocket on the back of the front passenger seat, the officer found a small pouch containing a card in the male passenger's name, a used syringe, a cut straw, and three pills said to be Benadryl. (Tr. 215, 227, 272). The officer questioned the male passenger in the back of a police cruiser while conducting the investigation.

{¶9} Appellant was ordered to remove his boots. He initially said this would be difficult because he had foot sores. (Tr. 217). When Appellant removed his first boot, a baggie fell to the ground from his pant leg area. When he removed his second boot, another baggie fell out of his other pant leg area. (Tr. 215-217).

{¶10} Based on his experience and training, the officer believed the crystalline substance in one baggie was meth (Item 4) and the white powdered substance in the other baggie was fentanyl (Item 5). The officer testified he viewed these substances in the past in various forms and considered the look, color, and texture of the substances. (Tr. 222). Both baggies recovered from Appellant were formed from a torn piece of a plastic bag knotted at the top. (Tr. 228); (St. Ex. 7).

{¶11} The officer read Appellant his *Miranda* rights while they stood by the cruiser. Upon placing the drugs on the hood of the cruiser, the officer asked Appellant, "Is that fentanyl?" Appellant confirmed the officer's visual identification by answering, "Yeah." The officer subsequently asked, "Fentanyl and meth?" Appellant nodded while responding in the affirmative. (Tr. 222, 236, 269); (St.Ex. 6).

{¶12} In further searching the van, a small ledger book was found in the back seat, which listed names, fractions, and what "looked like mechanic parts." (Tr. 255, 275). A shotgun was recovered from the back storage area. (Tr. 224-225, 241).

{¶13} An assisting officer standing near the driver's seat was looking through the observable compartments on a tower console in the center dashboard area. (St. Ex. 6). The flat top of the console, where control knobs and vents were located, seemed

abnormal or loose. (Tr. 218, 241). The assisting officer was able to lift this top, peer into a cavity, and spot baggies in the space nearest the driver's position. (Tr. 218, 240).

**{¶14}** Three baggies containing a crystalline substance were removed from the makeshift hidden compartment (Items 1, 2, and 3). (Tr. 220, 239). Regarding their packaging, Item 1's baggie was a torn piece of a plastic bag with a knotted top (similar to the baggies found on Appellant's person), and Items 2 and 3 were ziptop baggies. (St. Ex. 6-7). Two empty ziptop baggies fell from the compartment as well. Appellant subsequently claimed the male back seat passenger was a drug dealer while saying, "I'm just driving." (Tr. 257-258).

**{¶15}** All five baggies (three from Appellant's compartment and two from Appellant's person) were submitted to Ohio's Bureau of Criminal Investigation (BCI) for testing. The defense stipulated BCI was an accredited agency. The defense also stipulated the testifying BCI forensic scientist was an expert in drug chemistry. (Tr. 174). The scientist performed chemical testing on Item 1 and Item 5.

**{¶16}** Her testing of Item 5 revealed fentanyl in the white powdery substance found in one of the baggies on Appellant's person. Without the knotted baggie as packaging, this substance weighed 1.3 grams. (Tr. 182-183, 193). The police officer described 1.3 grams as a "substantial amount" of fentanyl. (Tr. 266). Again, Appellant pled guilty to this count of drug possession.

**{¶17}** The testing of Item 1 showed the crystalline substance (from the hidden compartment in Appellant's van) was meth. Without the knotted baggie as packaging, this substance weighed 27.79 grams. (Tr. 181-182, 187-188).

**{¶18}** The BCI scientist did not test the other three baggies containing the crystalline substance because their contents were visually consistent with the crystalline substance in Item 1 and together the weight of all four items containing the crystalline substance would not push the charge into the next statutory level. (Tr. 189, 191, 199). As she explained, the combined weight of Item 1 (27.79), Item 2 (56.63 grams), Item 3 27.21 grams), and Item 4 (19.28 grams) would not exceed 150 grams (50 times the 3-gram bulk amount for meth). (Tr. 189-193); (St. Ex. 5, lab report).[1]

---

[1] The BCI scientist noted she did not remove the packaging from the untested items and thus they were gross weights (including the weight of the baggie) because the level of offense for the tested meth would be unaffected by additional weights of the untested items. (Tr. 187-192).

{¶19}  On cross-examination, it was elicited that the BCI scientist received a narrative of the offenses from the police department, but she did not realize Item 4 was found in a different location as Items 1, 2, and 3.  Defense counsel asked if "maybe" she would have tested Item 4 if she knew about the distinct location recoveries, and she said, "Yes."  Hypotheticals were provided.  She was asked whether she would test the substance in both baggies if one was found in a pocket and this led to a search where "something else is found in a bag."  Her answer indicated she would test both upon such information.  She was also asked whether she would test the substance in both baggies if one was from a person's purse and one was from a vehicle's trunk.  She answered, "Possibly. Yes" but also suggested it depended on visual consistency.  (Tr. 198-199).

{¶20}  The trial court denied the defense's Crim.R. 29 motion for acquittal.  The jury found Appellant guilty of both charges and the forfeiture specification.  The court ordered a presentence investigation.

{¶21}  Thereafter, the court found the offenses were allied offenses of similar import and merged the aggravated possession of meth count into the aggravated trafficking of meth count at the state's election.  The court sentenced Appellant to a 7-year stated minimum prison term for aggravated drug trafficking, resulting in an indefinite maximum term of 10.5 years.  On the possession of fentanyl count to which Appellant previously pled guilty, the court imposed 12 months in prison to run consecutively, announcing a total sentence of 8 to 11.5 years in prison.  (1/30/25 J.E.).  The within appeal followed.

ASSIGNMENT OF ERROR

{¶22}  Setting forth arguments on both sufficiency and weight of the evidence, Appellant's assignment of error contends:

"A jury charge allowing a finding of possession of and trafficking in a controlled substance is erroneous and against the manifest weight of the evidence when the State's evidence is based on forensic (chemical) testing of multiple packages located at disparate places and where none of the packages at the second location were ever tested to determine the forensic (chemical) composition, the untested packages were accessible to multiple other persons, and the analyst was unaware the packages submitted were from different locations."

**{¶23}** Appellant states the main issues before the jury were whether the meth in the hidden compartment was imputable to him and whether the state established the relevant substance was meth. Recognizing one baggie containing a crystalline substance was forensically found to be meth by a BCI scientist, he suggests the tested meth from one location did not support a finding that the untested similar crystalline substance from a separate location was also meth. He points out the BCI scientist indicated she may have tested the substance from an additional baggie had she realized the baggie she tested was recovered from a different place. He discounts the value of the visual examinations, his admissions, or his spatial proximity to the meth in the hidden compartment of his van.

**{¶24}** Appellant concedes the applicable case law does not mandate the testing of all recovered substances. *See, e.g., State v. Edwards*, 2013-Ohio-4342, ¶ 40 (10th Dist.) ("random-sampling method is sufficient as a matter of law to support a determination that the entire substance recovered together and similarly packaged is the same controlled substance as that tested"). However, Appellant distinguishes the cases using the random sampling or hypergeometric method by claiming sufficient and weighty evidence only exists where the untested drugs occupied the same space as the tested drugs. *See id.* (nine baggies in the same grocery bag need not all be tested to prove identity).

**{¶25}** We note the untested drugs (found sufficient and weighty) in the cited *Edwards* case were necessary to push the level of the offender's drug offense to the next degree. On the contrary, the untested bags here were not required for Appellant's guilt, as the tested bag of meth alone satisfied the weight bracket charged. And, the BCI scientist testified the untested bags were visually consistent with the tested baggie of meth, but she did not assert those contents were meth (as they were not required for the offense, which was fully explained in her testimony).

**{¶26}** In accordance, there was no objection to the evidence itself or to her testimony on visual consistency. (Tr. 189-193, 278). Such an objection would not have been granted in any event because even counterfeit suspiciously packed or hidden substances would be relevant to various elements in a trafficking case when they are found near or in places related to the tested substances. Instead, the defense reasonably

relied on cross-examination in an attempt to discredit testimony or diminish its implications. *See State v. Dykes*, 2023-Ohio-4378, ¶ 10-22 (11th Dist.) (addressing the appellate citation to the BCI Drug Chemistry Methods Manual, concluding the lack of objection to the scientist's testimony was likely due to the defendant's recognition that the random-testing method is an accepted practice for the state to meet its burden of production in Ohio, and then rejecting sufficiency and weight challenges). We also note as to any allusion to relevancy, "it is only unfair prejudice to be weighed against the probative value, as the state's evidence will obviously prejudice a defendant." *State v. Malvasi*, 2022-Ohio-4556 ¶ 65 (7th Dist.).

**{¶27}** In essence, the case law and arguments set forth by Appellant acknowledge the decision to test only one of the three baggies recovered from the van's secret compartment was appropriate. His argument boils down to a claim that the baggie on his person had to be tested, despite his admission to carrying meth and despite its similar appearance to the tested substance from the compartment (as confirmed by an experienced officer and a forensic scientist). Citing sufficiency principles, he concludes the court should not have submitted the case to the jury because a rational juror could not find beyond a reasonable doubt the crystalline substance found on his person was meth. Addressing the weight of the evidence and referencing prejudice, he observes the more meth the state could attribute to him, the more likely it was the jury would find he was trafficking in it.

**{¶28}** Although the text of the assignment of error compresses two separate theories into one sentence, his arguments thereunder acknowledge the understanding that sufficiency of the evidence and weight of the evidence are distinct concepts with different tests. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387 (1997). Before reviewing each test, we note a sufficiency reversal is barred from retrial by double jeopardy, but a reversal on weight of the evidence is not. *Id.* at 388. The weight of the evidence became an issue after the prosecution presented legally sufficient evidence and then persuaded the jury to convict (and it is thus often observed a conviction necessarily is supported by sufficient evidence if it is supported by the weight of the evidence). *State v. Whitacre*, 2023-Ohio-1029, ¶ 76 (7th Dist.).

**{¶29}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *Thompkins* at 386. In reviewing the sufficiency of the evidence, the court views the evidence, including reasonable inferences, in the light most favorable to the prosecution to ascertain whether a rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138 (1998); *see also State v. Filiaggi*, 86 Ohio St.3d 230, 247 (1999) (viewing reasonable inferences in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (consider all evidence in the light most favorable to the prosecution, including reasonable inferences). This is the same standard applicable to a defendant's motion for acquittal. *See State v. Williams*, 74 Ohio St.3d 569, 576 (1996); Crim.R. 29(A).

**{¶30}** An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 2002-Ohio-2126, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543 (2001). Accordingly, sufficiency involves the state's burden of production on the elements rather than its burden of persuasion. *Thompkins* at 390 (Cook, J., concurring).

**{¶31}** Although count one was merged into count two and thus received no final judgment of sentence, Appellant applies his arguments to both counts in order to ensure a complete reversal if successful (and avoid a reactivation of the merged count). On the first count, the jury was instructed on drug possession with the following elements: knowingly obtain, possess, or use a controlled substance or a controlled substance analog. (Tr. 332); R.C. 2925.11(A). This offense is aggravated drug possession "if the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II [with the exception of certain other listed drugs] and any controlled substance analog . . ." R.C. 2925.11(C)(1). It is a second-degree felony with a mandatory prison term where "the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount . . ." R.C. 2925.11(C)(1)(c).

**{¶32}** Possess means "having control over a thing or substance . . ." R.C. 2925.01(K) ("but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found"); *see also State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982) (the defendant must be "conscious" of the object's presence). "A person can be in possession of an object

through immediate physical possession or constructive possession, which involves dominion and control over an object." *State v. Miller*, 2024-Ohio-4520, ¶ 45-46 (7th Dist.), citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976) and *Hankerson* at syllabus (constructive possession through dominion and control exists even if the object was not in the defendant's immediate physical possession).

**{¶33}** As the jury was instructed, actual ownership is not necessary to drug possession, and a person may possess or control property belonging to another. *State v. Mann*, 93 Ohio App.3d 301, 308 (8th Dist. 1993); *see also State v. Johnson*, 2024-Ohio-1163, ¶ 41 (8th Dist.) ("actual possession is ownership or physical control" and "the state need not establish ownership to prove constructive possession"). It was additionally pointed out to the jury how joint possession may exist when two (or more) people have "possession together" with both having "the ability to control it, exclusive of others." (Tr. 333); *see also State v. Tate*, 2018-Ohio-2765, ¶ 4 (7th Dist.). We also note R.C. 2925.11(A) prohibits more than possession. This drug possession statute additionally covers obtaining (or using) the substance, and the jury was instructed obtain means to acquire in any way. (Tr. 333).

**{¶34}** Pertaining to the second count, the jury was instructed on drug trafficking with the following elements: knowingly transport a controlled substance (or analog) when the offender knows or has reasonable cause to believe it is intended for sale or resale by the offender or another. R.C. 2925.03(A)(2); (Tr. 287, 335-336) (after the parties agreed to omit alternatives to the transport element). The offense is aggravated trafficking when the drug "is a compound, mixture, preparation, or substance included in schedule I or II . . . and any controlled substance analog . . . " R.C. 2925.03(C)(1) (except certain listed drugs). It is a second-degree felony if "the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount . . ." R.C. 2925.03(C)(1)(d).

**{¶35}** As stipulated by the parties, meth is a schedule II substance with a bulk amount of 3 grams. (Tr. 150, 332-333). Therefore, the level of offense here only required proof Appellant possessed *15 grams* of meth. Appellant was not charged with the next level of offense, which applies when the amount of meth reaches 150 grams (50 times three 3 grams).

**{¶36}** As intent dwells in the mind of the defendant, establishing the mens rea for an offense revolves around an evaluation of the totality of the surrounding facts and circumstances. *State v. Treesh*, 90 Ohio St.3d 460, 484-485 (2001). Circumstantial evidence inherently possesses the same probative value as direct evidence. *Id.* at 485. The mens rea of knowingly is statutorily defined as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2902.22(B).

**{¶37}** For a sufficiency review, the question is merely whether "any" rational trier of fact could have found the contested elements satisfied beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193 (1998), quoting *Jackson*, 443 U.S. at 319. Here, the three baggies from the hidden compartment all contained a white crystalline substance. The BCI scientist tested one of those items (Item 1). The law cited by Appellant indicates the state could appropriately limit the testing of baggies recovered from the same location (Items 1, 2, and 3). Notably, the tested Item 1 contained meth and weighed 27.79 grams. This alone far surpassed the charged level of 5 times the 3-gram bulk amount of 15 grams.

**{¶38}** In addition, the tested substance in Item 1 appeared consistent with the substance in Items 2 and 3, all of which were found compacted into the same cavity. The makeshift hidden compartment was located in the front console tower of a van registered to Appellant and being driven by Appellant. The driver's body was *behind* the console; that is, the console was not an armrest between the seats. The driver's body would barely move in order for his hand to move from the steering wheel to manipulate the console cap. The space under the console cap where the baggies were found was in the left side of the cavity, which was the side closest to the driver's seat. And, the driver's seat was

occupied by Appellant in his own vehicle where he was admittedly transporting a shotgun. The operability or inoperability of the gun (Appellant said previously belonged to his grandfather) was not a dispositive fact to make its presence relevant to a trafficking charge (or to its forfeiture). The lifting of the console top to hide Items 1, 2, and 3 in the left portion of the cavity was not something that could be easily performed by a passenger during a traffic stop.

**{¶39}** Additionally, Appellant carried a crystalline substance similar to the tested Item 1 in his pant leg area (Item 4). In viewing the tested Item 1 from Appellant's van compartment and the untested Item 4 from Appellant's person, one can see the packaging technique was similar; both were constructed from torn plastic bags knotted at the top to form a pouch. Although Item 4 from Appellant's pant leg was not tested, the distinct-looking white powder (non-crystalline) substance from his other pant leg (Item 5) was tested and found to contain fentanyl (and he pled guilty to that offense). Moreover, Appellant *admitted* the two items he carried on his person were in fact fentanyl and meth.

**{¶40}** Collectively, all this allowed a rational person to find Appellant was trafficking in the substance in the van, especially in the amount in the item tested by BCI. Even if one were to strike or discount the rational inference regarding the untested baggie on his person, the failure to test Item 4 did not eliminate the sufficiency of the evidence on the meth being transported in Appellant's van. Again, reasonable inferences are evaluated in the light most favorable to the prosecution. *Goff*, 82 Ohio St.3d at 138; *Filiaggi*, 86 Ohio St.3d at 247. Some rational juror could conclude beyond a reasonable doubt that Appellant knowingly transported meth when he knew or had reasonable cause to believe it was intended for sale or resale by him or another. R.C. 2925.03(A)(2); (Tr. 287, 335-336) (agreeing to proceed on the verb "transport" and omit other verbs constituting the offense).

**{¶41}** As there was sufficient evidence of the trafficking offense in count two, the arguments specific to count one drug possession need not be addressed. Regardless, contrary to Appellant's other argument, a rational juror could conclude beyond a reasonable doubt that he obtained or possessed 15 grams or more of meth. The nature and location of the compartment in Appellant's own van that he was driving allowed a rational fact-finder to conclude he obtained the drugs or possessed them by exercising

dominion and control over them. In sum, there was sufficient evidence of the possession offense in count one, which was merged into count two in any event.

**{¶42}** Weight of the evidence concerns the effect of the evidence in inducing belief, and our corresponding review evaluates "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. The appellate court considers whether the state met its burden of persuasion. *Id*. at 390 (Cook, J., concurring) (as opposed to the state's burden of production involved in a sufficiency review).

**{¶43}** When a defendant argues a conviction is contrary to the manifest weight of the evidence, the appellate court reviews the entire record, weighs the evidence including reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 2011-Ohio-4215, ¶ 220, citing *Thompkins* at 387. The discretionary power to grant a new trial on manifest weight grounds is limited to the "exceptional" case, one where the evidence weighs "heavily" against a finding of guilt. *Id.*

**{¶44}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 2011-Ohio-6524, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. This is because the trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we do not choose which one we believe is more credible." *State v. Carter*, 2017-Ohio-7501, ¶ 105 (7th Dist.), citing *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist. 1999).

**{¶45}** Furthermore, where a case was tried by a jury, only a *unanimous* appellate court can reverse on manifest weight of the evidence grounds. Ohio Const., art. IV, § 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins* at 389.

{¶46} A witness with experience in the subject is not barred from providing an opinion about the identity of a drug that was not subjected to lab testing. *State v. McKee*, 91 Ohio St.3d 292, 294-297 (2001) (even a drug user lay witness can provide an expert opinion on identity of a drug if accompanied by a foundation as to personal knowledge and experience), citing Evid.R. 701. The officer spoke about identifying meth and fentanyl based on his experience and training. *His visual opinion of the substances on Appellant's person was confirmed by Appellant himself.* Notably, Appellant admitted he possessed on his person both fentanyl and meth. Further, his admission to carrying fentanyl was consistent with the officer's visual opinion on the fentanyl and was confirmed by BCI testing (and by Appellant's guilty plea).

{¶47} Regardless, Item 1 was tested by BCI and found to contain meth. Item 1 was nestled with two other baggies containing a similar crystalline substance in a secret compartment created by someone who tampered with the driver's side top of a console tower in the van, which Appellant owned and was driving. Appellant cites case law supporting the decision to refrain from testing Items 2 and 3 after testing Item 1 due to their physical proximity and visual consistency. Under said law, the meth in Item 1 squished into a cavity with other packages containing a visually consistent crystalline substance, all together weighing over 100 grams, supported the other evidence on identification and permitted a conclusion that Items 2 and 3 contained the same substance as Item 1. As the state emphasizes, this conclusion was not necessary to the case in any event because the meth in Item 1 weighed 27.29 grams, well over the bulk amount by itself.

{¶48} As to Item 4, again, Appellant admitted the substances found on his person were meth (Item 4 crystalline substance weighing approximately 19.28 grams) and fentanyl (Item 5 white powdered substance) after the officer visually identified them as such from his experience and training. The baggie with white powder was confirmed to contain fentanyl by BCI testing. The failure to test Item 4 did not render suspect the verdict on trafficking more than 15 grams of meth or the verdict on possession of more than 15 grams of meth. The testing decisions made in this case did not cause the jury to lose its way or prejudice Appellant's defense.

**{¶49}** Finally, Appellant's statement that the back seat passenger was the actual drug dealer and he was "just driving" was not necessarily exculpatory *but instead could be reasonably viewed as inculpatory*. As set forth above, drug trafficking would be accomplished if Appellant knowingly transported the meth while knowing or having reasonable cause to believe the meth was intended for sale or resale by the offender *or another*. R.C. 2925.03(A)(2). We incorporate our recitation of the evidence from our Statement of the Case and sufficiency analysis. The direct and circumstantial evidence reviewed above strongly weighs in favor of finding Appellant so transported the meth in his van. *See, e.g., State v. Davis*, 2022-Ohio-577, ¶ 24-34 (5th Dist.) (emphasizing proximity of drugs in vehicle and ownership of vehicle in addressing sufficiency and weight).

**{¶50}** As such, the jury verdict on the merged count of possession of meth need not be reviewed. In any case, persuasive evidence convincingly tilted the scales toward the jury's conclusion that he possessed or obtained 15 grams or more of meth. The totality of the evidence regarding the meth in the secret compartment indicated Appellant's dominion and control over it. Upon reviewing the entire record, weighing the evidence along with reasonable inferences, and considering the credibility of witnesses, we cannot say the jury clearly created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. This is not the "exceptional" case where the evidence weighs "heavily" against the conviction of trafficking in more than 15 grams of meth (or the merged possession conviction). *See Lang*, 2011-Ohio-4215, at ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶51}** For the various reasons discussed above, Appellant's assignment of error is overruled, his conviction is upheld, and the trial court's judgment is accordingly affirmed.

Waite, J., concurs.

Dickey, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**